# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | |
|---|---|
| LISA ANN LOVE,       ) | |
|                  ) | |
|       Plaintiff,     ) | |
|                  ) | |
| v.                   ) | |
|                  ) | Case No. CV615-051 |
| CAROLYN COLVIN,     ) | |
| Acting Commissioner of    ) | |
| Social Security,        ) | |
|                  ) | |
|       Defendant.    ) | |

## **REPORT AND RECOMMENDATION**

Alleging disability due to back pain, depression and other ailments,[1]

Lisa Ann Love seeks judicial review of the Social Security Administration

(SSA) Commissioner's denial of her application for Disability Insurance

benefits (DIB), and Supplemental Security Income (SSI). Doc. 1. She

testified at an administrative-review hearing before an Administrative

---

[1] She alleged "disability commencing on January 13, 2011, due to MDD, Lumbago, Tietze's disease, generalized anxiety disorder (GAD), bipolar disorder, chronic airway obstruction, chronic obstructive lung disorder, pulmonary embolism, depressive disorder, central protrusion with inferior disc extrusion, myofascial pain, left thigh parethesias, peripheral mononeuropathy, lumbar radiculitis with herniated pulposius, insomnia, dysthymic disorder, deterioration of physical functioning [cite]." Doc. 10 at 2.

Law Judge (ALJ) and unsuccessfully appealed an adverse ruling to the

SSA's Appeals Council.   Doc. 8-2 at 2-4.[2]

# I.  GOVERNING STANDARDS

In social security cases, courts

> review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted).  "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).   In response to the showing the claimant makes, the ALJ applies

> a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to

---

[2]   "Doc." citations use the docket and page numbers imprinted by the Court's docketing software.   Those do not always line up with each paper document's printed pagination.   They generally parallel the "Tr." citations used in the parties' briefs.   Those cites use the page numbers in the bottom right corner of the administrative record, which is located on the docket at doc. 8.

the next step. *Id*. § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id*. § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id*. § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id*. § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC to perform her past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience.[3] An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert]. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnotes added).

## II. BACKGROUND

Love, 42 at her alleged onset date and 46 at the time of the administrative hearing, doc. 8-2 at 41, completed up to the seventh grade

---

[3]   At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id*. (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

and last worked in 2008 as a fruit-jam/preserve production helper.[4]   Doc.

8-2 at 43.   She has a driver's license and can drive for "probably an hour,

hour and a half."   *Id.*   Her reading comprehension is limited, doc. 8-2 at

44, ("I don't understand it a lot of times; it's according to what I'm

reading."), and she can "somewhat" do basic math (add and subtract).

At 5' 9" and 209 pounds, Love says she had gained "[p]robably about

50 something pounds" since January of 2011 (her administrative hearing

was held on October 1, 2014).   Doc. 8-2 at 37, 44.   She says she eats very

little, however, and that her doctors thus are mystified.   *Id.* at 44-45

("They said it could be stress and nerves doing it").   The ALJ asked Love:

> Q. [W]hat do you consider to be your primary physical or mental
> impairments that you have that make you believe that you're not
> able to work anymore?
>
> A.   Because I can't get out in public.   If I get around people or a
> bunch of people, I start having anxiety attacks.   And I just -- I just
> want to be at home, I just want to be at my house, you know, I feel
> safer, secure.
>
> Q.   So what impairment do you have that's causing you to have
> these anxiety attacks.   Do you have a diagnosis from a doctor?
>
> A.   Yes.   Dr. [Ivy Lee] Shuman[, Jr.].   Dr. Shuman told me I had

---

[4]   She worked as a "topper" (*i.e.*, "[p]utting labels on, putting toppers on" boxes of
jams and preserves at a jams and preserves factory). Doc. 8-2 at 46.

bipolar and manic depression.

Q.  And how long have you had that?

* * *

A.  Probably right after my mom passed away.  My mom passed away in 2005.

Q.  Okay, so you were still working then, weren't you?

A.  Yes, sir.

Q.  So you were able to work with this condition right up to 2008. How was -- how did it change?  Did it change?

A.  Yes, sir, it got worse.

Q.  Any other impairments that you have other than bipolar disorder?

A.  My back.

Doc. 8-2 at 49-50; *see also id.* at 51 ("I have [sic] my lower back hurts real bad.  I can't squat down or bend over, and I can't pick up nothing heavy."); *id.* at 73 (Dr. Shuman prescribes her "mental health medications"; also, she suffers "[p]robably about an eight or a nine" level of pain).

Love explained that her back began hurting in 2004, but stepped up

"in 2008 when the disc slipped."[5]  Doc. 8-2 at 51.  The pain is constant, a daily affliction that fluctuates in intensity.  *Id.*  It is mitigated by lying down, aggravated by "standing up, sitting, or walking or if I try to bend over and pick up something or do something."  *Id.* Her "pain management doctor" (Dr. Andrew B. Pandya) prescribed and she takes Oxycodone, *id.* at 52, but it makes her sleepy and forgetful for most of the day.  *Id.* at 70.

The ALJ asked Love about any other impairments that kept her from working.  She replied: "manic depression."  Doc. 8-2 at 55.  She also stated that she has short-term memory problems: "I can go to -- say go to another room to get something and forget before I get there what I went for."  *Id.* at 65.  Her daily activities are limited -- she can clean house and cook but says not without her daughter's assistance.  She goes grocery shopping about every three weeks and that takes 30 minutes, but she needs to lean on a shopping buggy while in the store.  *Id.*

---

[5]   While working as a "topper" in 2004, she "picked up a box and [she] hurt [her] back.  And then in 2008, they were sending me to a chiropractor for my back and my disc kept popping out."  Doc. 8-2 at 46; *see also id.* at 68 (she could carry ten pound boxes "but we would even pick up one to two boxes at a time").  Her employer discharged her (and thus, she lost her insurance) shortly after it referred her to a chiropractor.  She then filed an unsuccessful worker's compensation claim.  *Id.* at 46-47.

Plaintiff has no hobbies, smokes "[p]robably about about five or six" cigarettes daily, and watches 1-2 hours of TV every day. *Id.* at 58-63. She is able to dress herself in the morning "but a lot of times I don't want to." *Id.* at 57. Love rarely goes out to eat, does no volunteer work and attends no meetings or classes, but does take care of her three miniature Dachshunds dogs. *Id.* at 63-65.

Finally, plaintiff doesn't "like to be around" strangers" and often will "start having an anxiety attack" when she is. *Id.* at 66. Zoloft (a medication) sometimes helps, *id.* at 67, but she otherwise feels her heart speed up and "I start crying for no apparent reason." *Id.* And "[a] lot of times I just want to kill myself." *Id.* at 69. Love claims an isolating depression -- the kind that drives her to stay in her room, not get dressed, and "I don't really want nobody around me." *Id.* at 69. That happens "about every day" and lasts for hours. *Id.* at 70. Hence, she is "pretty much bedridden" at least half of the days of the month. *Id.* She is not a total recluse, however. She has a cell phone and is on Facebook (hence, uses a home computer) "[p]robably about five or 10 minutes a day when [her computer's] on." *Id.* at 64.

The ALJ reviewed her testimony and medical records -- mainly focusing on her knee problems (she'd had an operation to fix her knee) and her mental health issues (bipolarity, depression). He determined that Love is saddled with some severe impairments -- degenerative disc disease of the lumbar spine with lumbar radiculitis, and depression. Doc. 8-2 at 23. But she did not have an impairment or combination of impairments that met or equaled any of what are known as "listed impairments." *Id*. at 23-24.

Moving on to steps four and five, the ALJ found that Love had the RFC to perform light work as defined by 20 CFR 404.1567(b)[6] and, while she could not return to her past relevant work, she still could perform a significant number of jobs in the national economy (here, the ALJ was assisted by a Vocational Expert's (VE's) testimony) such as Recreation Aide, Cashier II, and Garment Sorter. Doc. 8-2 at 25, 75-76. 80-81. Hence, the ALJ concluded, she was not disabled. Doc. 8-2 at 28-29.

---

[6] "The regulations provide that an individual who is capable of performing light work must be able to: lift 'no more than 20 pounds at a time with frequent lifting or carrying objects up to 10 pounds'; and partake in 'a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.' 20 C.F.R. § 404.1567(b)." *Roux v. Comm'r of Soc. Sec.*, 2016 WL 3258393 at * 4 (M.D. Fla. June 14, 2016).

## III. ANALYSIS

It may be tempting to exaggerate and medically document incapacity and pain when pursuing DIB/SSI dollars. ALJs are tasked with screening out exaggerators, fakers. But they must do so by applying the correct legal standard *and* be evidentially supported.

Love insists her claim is bona fide, and the ALJ erred by "ignoring every medical expert who has offered an opinion regarding [her RFC] and finding that she can perform light work." Doc. 10 at 11. The error extended, she points out, even to "the consultative examinations provided by the ALJ." *Id.* at 12. In fact, she contends, "a review of the opinions at issue reveals absolutely no record of support for the ALJ's findings." *Id.* The ALJ thus "improperly substituted his opinion for the medical expert in assessing Ms. Love's RFC." *Id.*

To the contrary -- substantial evidence supports the ALJ's decision. On step two he expressly found that Love failed to show that her knee reconstruction, pain disorder, bipolar disorder and other problems caused "any significant work-related limitations that meet the durational requirement." Doc 8-2 at 24. Hence, they "are deemed non-severe."

*Id.* Assessing her mental and physical impairments together, he credited SSA consultative examiner John C. Whitley, M.D.'s findings (doc. 8-8 at 68-73) to conclude that:

> In activities of daily living, the claimant has mild restriction. She admitted to [Dr. Whitley] that she can follow directions. She will keep her appointments in her purse. She can bathe and dress for weather and situation. She will cook simple items on a stove daily and can use a microwave. She has a license. She can organize and perform her own shopping. She can use a computer and talks to family members. Despite her pain and while taking rest breaks, she is able to clean her home by sweeping, mopping, making her bed, cleaning her kitchen, dusting, washing dishes, and washing and folding clothes. She can care for her children and manage her own personal finances [cite].

> In social functioning, the claimant has mild difficulties. Dr. Whitley concluded her social functioning would be only mildly impacted by psychological problems [cite].

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant has moderate difficulties. The mild findings made by Dr. Whitley support a finding that any limitations are no more than moderate [cite].

> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

Doc. 8-2 at 24.

Further, the ALJ considered the Listed Impairment 12.04 severity criteria, as guided by SSR 96-8p, then globally assessed Love's physical

and mental impairments to conclude that she is exaggerating her problems and in fact possesses the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[,] except she can occasionally perform all posturals." Doc. 8-2 at 25. The ALJ paused to specify her other limitations in further finding that "[s]he is best suited to performing simple routine repetitive work in an environment involving infrequent workplace changes that are gradually introduced and no fast-paced production work. She can have frequent interaction with the public, coworkers and supervisors. She can maintain concentration for two-hour time increments." *Id.*

These findings, which are supported by the record, figured into the hypothetical question that the ALJ posed to the VE, where the ALJ accounted for claimant's considerable medical issues and treatment (*e.g.*, "prior noncancerous right leg tumor removed," *id.* at 27; radiating low back pain, yet "nothing significant" found in an MRI, and "[a]ll four extremities had age-appropriate range of motion and muscle tone without instability," *id.*). In fact, he adjusted for that: "the [RFC] has been reduced to the light exertional level with some postural and

environmental limitations," and this included "moderate limitation in her concentration, persistence, and pace. . . ." *Id.* The VE testified that she can work as a Recreation Aide, Cashier II, and Garment Sorter. Tr. 27.

To be sure, the ALJ made credibility choices here. His comprehensive ruling accepted the VE's testimony in finding Love able to perform light work, and he detailed why he found Love's testimony "concerning the intensity, persistence and limiting effects of [her symptoms] not entirely credible. . . ." Doc. 8-2 at 26. He reviewed Dr. Whitley's observation that Love "was alert and presented with moderate depression and very mild anxiety," and enjoyed coherent thought processing and lucidity. *Id.* True, she is saddled with a "diagnosed depressive disorder," yet scored a "GAF of 60 indicating [only] moderate (bordering mild) symptoms."[7] *Id.* Also, "she appears able to follow multiple-step instructions," and her mental health issues currently have a

---

[7] "The Global Assessment of Functioning, or GAF Scale, is a numeric scale that mental health physicians and doctors use to rate the occupational, psychological, and social functioning of adults. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision, 4th ed. 2000)." *McCloud v. Barnhart*, 166 F. App'x 410, 413 mn. 2 (11th Cir. 2006). A score between 51 and 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Gray v. Colvin*, 2014 WL 1118105 at * 5 n. 15 (N.D. Fla. Mar. 20, 2014) (cite omitted).

mild impact on her ability to sustain effort, focus, and pace. Her ability to interact with others would [only] be mildly impacted by psychological symptoms [cite]." *Id.*

Love cites no knock-out flaws to Dr. Whitley's report (doc. 8-8 at 68-73) which supplies substantial evidence to support the ALJ's ruling. *See, e.g.*, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (consulting physician's opinion that claimant suffering from spinal degenerative joint disease and reactive depression could perform light work, and could not perform work involving lifting of more than 20 to 25 pounds, or frequent lifting of more than 15 pounds was supported by substantial evidence, for purpose of social security disability claim, where opinion was consistent with objective medical evidence and another physician's opinion).

Love is correct that "Social Security regulations require the ALJ to consider many factors when evaluating medical opinion evidence. *See* 20 C.F.R. § 404.1527(d)." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). The more well-explained and well-supported an opinion is, the more weight it receives. 20 C.F.R. § 404.1527(c)(3).

And "the more consistent an opinion is with *the record as a whole*, the more weight" it garners. *Id.* at (c)(4) (emphasis added).

Love also correctly reminds that the deference owed medical experts is further stratified: "[T]he opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists."[8] *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006). Non-examining, consultative physicians are due the least weight, though the regulations still require that the ALJ consider their opinions and

---

[8] Importantly, the treating-examining-consulting hierarchy does not mandate that an ALJ always weight a treating physician's opinion more than the others. Good cause exists to deviate from the general weighting rules if:

1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004). Therefore, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

*Farkas v. Astrue*, 2012 WL 750547 at * 6 (M.D. Fla. Mar. 8, 2012).

determine that weight based upon their consistency with record evidence. 20 C.F.R. § 404.1527(f); *see also Tapley v. Colvin*, 2015 WL 764022 at * 3 (S.D. Ga. Feb. 23, 2015) ("As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record.") (citing *Crawford*, 363 F.3d at 1160).

The ALJ complied with those standards. The record shows that Dr. Whitley personally examined Love, and the ALJ gave his opinion "significant evidentiary weight" when he assessed it against the rest of the objective findings in the record. . . ." *Id.* at 26-27. All of the ALJ's rulings based on Whitley's report (doc. 8-8 at 68-73) are supported by that report, which has not been shown to be demonstrably (let alone disregardably) flawed.

In contrast, Love's treating physician (Dr. Shuman) "provided a medical source statement indicating moderate to marked limitations, [but] no basis for this opinion was provided, and there is no support for this finding in the treatment notes. Therefore, [the ALJ concluded] this statement is afforded little weight." Doc. 8-2 at 27. The record supports the ALJ on this point, too. *See* doc. 8-9 at 19-21 (Shuman ticked off

"Moderately Limited" to "Markedly Limited" mental function limitation lists but supplied no explanatory basis); *see also* doc. 8-8 at 61 (exam notes showing problems that Love related but otherwise checking off "unrem." for 100% of "Realm" categories (*i.e.*, Appearance, Behavior/Speech, Suicidal/Homicidal Ideation/Plan, etc.). Dr. Shuman also failed to provide any basis for his opinion on the form requested. Doc. 8-9 at 19-21.

Nor did Dr. Shuman translate his "checklist findings" (many included "Markedly Limited") into a "Functional Capacity Assessment," which expressly required that a doctor must "[e]xplain your summary conclusions in narrative form," and "[i]nclude any information which clarifies limitation or function. Be especially careful to explain conclusions that differ from those of treating sources or from the individual's allegations." Doc. 8-9 at 21. Those omissions were substantial. *See Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610, 612 (11th Cir. 2012) ("Checking the box 'Moderately Limited' means only that the claimant's capacity is impaired; it does not indicate the degree and extent of the limitation. After checking the boxes as an 'aid,' a doctor is

then required to detail his actual RFC assessment.") (cites omitted); *accord Serrano v. Comm'r of Soc. Sec.*, 2014 WL 644722 at * 3 (M.D. Fla. Feb. 19, 2014). This was not a clear error case. *Compare Colegrove v. Colvin*, 86 F. Supp. 3d 221, 231-32 (W.D.N.Y. 2015) (ALJ's failure to address medical opinions of treating physician in denying claimant's application for social security disability benefits was clear error requiring remand; treating physician opined that claimant would not be able to find and maintain employment due to his chronic low back pain with degenerative disc disease and seizure disorder, treating physician had been treating claimant for approximately three years, and the administrative record was full of treating physician's notes).

Love challenges the weight the ALJ gave to Dr. Whitley, versus that given to Dr. Shuman, and complains that the ALJ ignored input from other doctors. It is true that Whitley and other medical health sources noted Love's very tough past life -- including abuse by a stepfather and past husband (one of three), doc. 8-8 at 63, 66, 72 -- but it also is true that she managed to work for a substantial number of years and even supervise others (workers, her children) despite that past. Too, Love has

suffered various (and painful) physical ailments but also has sufficiently recovered from them. Her 2013 knee surgery, for example, produced a good prognosis, noting that many of her physical issues would be resolved after physical therapy. Doc. 8-2 at 27. And it paid off: "By May 2014, the knee examination was entirely benign [cite]." *Id.* Love complained of "low back pain radiating to her lower left buttock" in September, 2014, yet an MRI and other medical-based evidence revealed "a small disk at the L5-S1 but really nothing significant," *id.,* and the doctor then observed a "generally healthy 46-year old with no focal motor deficits today." *Id.*

Note, too, that some medical records appear to merely recite what Love told the individual filling out the form, rather than reflect a medical professional's diagnosis/prognosis. *See, e.g.*, doc. 8-8 at 63. That of course can and should be discounted, if not disregarded -- which is what the ALJ did here. He was also authorized to discount those medical records, as the Commissioner properly points out (doc. 11 at 16 n. 6), that were generated well before Love's January 13, 2011 alleged onset date and otherwise fail to satisfy the 12-month durational requirement set forth in

42 U.S.C. § 423(d)(1)(A).[9]

Especially since it is far too easy to simply cite every last ailment, ache and pain, then coat all that with "I'm depressed" claims in quest of DIB/SSI dollars, the ALJ was both obligated and authorized to weigh *all* of the testimonial and medical evidence,[10] including contradictory medical findings, in concluding that Love is at least capable of some light work -- narrowed to accommodate specific limitations -- and that such work existed for her to perform. *See Brown v. Astrue*, 2012 WL 2979046 at * 2 (M.D. Fla. Jul 20, 2012) (similar case where the VE was also asked to account for "additional limitations" and the range of available jobs was similarly narrowed; substantial evidence supported ALJ's determination

---

[9] Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…" 42 U.S.C. § 423(d)(1)(A).

[10] The Court has reviewed the other medical evidence in the record, including that involving Love's visits to the East Georgia Healthcare Center, *see, e.g.*, doc. 8-8 at 9 ("General Examination" noting normal-range vitals), and to Dr. Andrew Cichelli, M.D., who treated her from July 2013 to January 2014, and whose treatment notes show "unremarkable" respiratory issues, doc. 8-9 at 3 (1/16/14, 3-month follow up visit and CT Scan Review), a finding in harmony with Dr. Andrew B. Pandya's July 21, 2014 notation that Love's lungs were clear and she enjoyed a regular cardiac rate and rhythm, doc. 8-9 at 35 -- hence, showing that she was no more limited, functionality-wise, than the ALJ found.

that claimant could not perform past work "as a school bus driver" but could now perform as "a food checker (sedentary), office helper (light), and cashier II (light).").

Finally, this is a reasonably close case. Were the Court authorized to reweigh the evidence, it would revisit Love's testimony, along with her medical evidence supporting her mental-health and pain-based incapacity claims. In that regard, she complains that the ALJ disregarded her cumulative (and dispositive) showing without evidentiary support. Doc. 10 at 2. Where, as here, a claimant attempts to establish pain-based disability through her own testimony of subjective limitations, the "pain standard" applies, *see Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), and it is worth pausing to illuminate what that is and why it was properly applied here. The standard demands:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Watson v. Colvin*, 2015 WL 8467014 at * 6 (S.D. Ga. Nov. 18, 2015)

(quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Claimants like Love may rely on their own subjective testimony of pain, which, if supported by medical evidence, would be sufficient to establish disability. But an ALJ can discredit that testimony. *Id.*[11] He need only "articulate [his] explicit and adequate reasons for doing so." *Id.*

The ALJ did that here. He evaluated Love's credibility and gave sufficient reasons for concluding that her subjective pain and mobility-restriction claims were not sufficiently credible. His credibility findings were both explicit and supported by citation to specific evidence. And contrary to her contention otherwise, doc. 10 at 20-21, his findings were properly and, within reason, accurately reflected in the VE hypothetical that he used. Doc. 8-2 at 75-76 ("I'd

---

[11] As the Eleventh Circuit explained:

The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986); *Landry*, 782 F.2d at 1152. If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so. *Hale*, 831 F.2d at 1011. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *Hale*, at 1054; *MacGregor*, 786 F.2d at 1054.

*Holt*, 921 F.2d at 1223.

like you to assume a hypothetical individual of claimant's age, educational background and work experience who is limited to light exertional and all postural limited to occasional and also avoid concentrated exposure to hazardous machinery and unprotected heights and has mental limitations in that they're limited to simple, routine, repetitive tasks. Interaction with the public for work and supervisors is limited to more than frequent. Also infrequent workplace changes, gradually introduced with no fast pace production work, can maintain concentration for two hour time period.").[12]

---

[12] As explained elsewhere:

An "ALJ's hypothetical question must take into account the ALJ's step two finding that a claimant has moderate limitations in maintaining concentration, persistence, and pace, unless the ALJ indicates that the medical evidence suggests that the claimant's ability to work is unaffected by the limitation or the ALJ's question implicitly accounts for the limitation." *Garcia v. Comm'r of Soc. Sec.*, 2013 WL 2290556, at *5 (M.D. Fla. May 24, 2013) (citing *Winschel*, 631 F.3d at 1181). Since *Winschel*, the Eleventh Circuit has recognized that a hypothetical question could sufficiently account for a moderate limitation in concentration, persistence, or pace by including a restriction to simple or routine tasks where the medical evidence demonstrates that the claimant retains the ability to perform those tasks despite the limitations. *See, e.g., Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 907 (11th Cir. 2013); *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950–51 (11th Cir. 2013); *Washington v. Comm'r of Soc. Sec.*, 503 F. App'x 881, 883 (11th Cir. 2013); *Scott v. Comm'r of Soc. Sec.*, 495 F. App'x 27, 29 (11th Cir. 2012).

*Serrano*, 2014 WL 644722 at * 3. Here the ALJ found that, "[w]ith regard to

It remains the province of the ALJ to determine a claimant's credibility so long as he explains his credibility determination. *Holt*, 921 F.2d at 1223-24. Here he highlighted and assessed the contradictions in Love's statements and the record, which a reasonable person, *see Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), could conclude supports finding her not credible. *See Moore*, 405 F.3d at 1212 (inconsistencies between claimant's descriptions of daily activities and claimed infirmities supported ALJ's credibility finding). While in this case the Court might well interpret that evidence to the contrary, that's not the judicial review standard. As explained *supra*, the ALJ need only sufficiently explain his reasoning on a record with enough (*i.e.* substantial) evidence to support it. *See, e.g., Marley v. Comm'r of Soc. Sec.*, 2015 WL 847376 at * 7 (M.D. Fla. Feb. 26, 2015) ("The ALJ therefore sufficiently explained his reasons for finding Plaintiff less than entirely credible, and it is not for the Court to reweigh the evidence nor will the Court disturb a clearly

---

concentration, persistence or pace, the claimant has moderate difficulties. The mild findings made by Dr. Whitley support a finding that any limitations are no more than moderate." Doc. 8-2 at 24. The VE opined that Love could not return to her "topper" work, doc. 8-2 at 76, but could perform the light work jobs noted above.

articulated credibility finding that is supported by substantial evidence."). The remainder of plaintiff's arguments are grounded on evidence reweighing, which this Court cannot do.

## IV. CONCLUSION

The ALJ's conclusion, that Love is "not disabled," doc. 8-8 at 29, therefore should be **AFFIRMED** and this case **DISMISSED WITH PREJUDICE**.

**SO REPORTED AND RECOMMENDED**, this ___20th___ day of June 2016.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA